UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

CONNIE WILLIAMS,

    Plaintiff,

v.

THE CITY OF LAS VEGAS, a Nevada municipality; DOES 1-10, inclusive; ROE CORPORATIONS 1-10, inclusive,

    Defendants.

2:08-CV-01344-LRH-GWF

ORDER

    Before the court is Defendant City of Las Vegas' Motion for Summary Judgment (#19[1]). Plaintiff Connie Williams has filed an opposition (#22) to which the City replied (#25).

**I.    Facts and Procedural History**

    This is an employment discrimination and retaliation dispute arising out of Plaintiff's work in the City's Department of Neighborhood Services. In 1985, Plaintiff began her employment with the City in the Department of Detention and Enforcement, working as a corrections officer, corrections sergeant, and corrections counselor.

    During her tenure in Detention and Enforcement, Plaintiff was diagnosed with reactive airway disease. Based on the disease, Plaintiff successfully pursued a worker's compensation claim

---

[1] Refers to the court's docket entry number.

against the City. Plaintiff subsequently filed a claim against the City under the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101-12213, concerning the air quality at the City's detention center.

In October of 2005, all of the civilian corrections counselors in Detention and Enforcement, including Plaintiff, were transferred to the Department of Neighborhood Services. The City assigned Plaintiff and the other caseworkers to work in the EVOLVE program, which provides workforce development and support services to ex-offenders, chronic inebriates, and the homeless.

Within the EVOLVE program, Plaintiff was assigned solely to the Emergency Housing Assistance Program ("EHAP"). EHAP participants receive one-time assistance from the EHAP counselors to help them overcome a short-term crisis. Thus, as an EHAP counselor, Plaintiff had little to no ongoing case management responsibilities. From February, 2006, through February, 2007, Plaintiff had an average caseload of 73 cases. During the same time period, other caseworkers working within the EVOLVE program had caseloads ranging between 46 and 111 cases, with an average of 77 cases per caseworker.

From June 19, 2006, to June 30, 2006, and from August 31, 2006, to September 27, 2006, Plaintiff took leave under the Family Medical Leave Act to undergo knee surgery. During Plaintiff's absences, the City assigned Stacy Youngblood, another caseworker, to field phone calls and take basic information for Plaintiff until she returned. At the time, Youngblood was working in the Women in Transition Program and the Prisoners Reentry Program and had an existing caseload of 89 cases.

On September 29, 2006, the City erroneously informed Plaintiff and two other employees that after they transferred from Detention and Enforcement to Neighborhood Services, they did not carry over their seniority. This error was corrected in November of 2006.

Also in November of 2006, while at the EHAP office, Plaintiff began having problems breathing. Plaintiff believed that this problem was a result of the heater in the building. Plaintiff

2

complained to her union representative, and the union representative had Plaintiff discuss the issue with the City's Safety Officer. Following the meeting, a City representative came to Plaintiff's office to check the air quality. The results of this check are not clear because, on December 22, 2006, before the City made any changes related to the air quality in her office, Plaintiff resigned. In her exit interview, Plaintiff stated she was resigning because she was "burned out" and trying "to regain health." (Def.'s Mot. Summ. J. (#19), Ex. F.)

On June 18, 2007, Plaintiff filed a Charge of Discrimination with the Nevada Equal Rights Commission. In the charge, Plaintiff alleged claims for disability-based discrimination, retaliation, and constructive discharge. On March 10, 2008, the Nevada Equal Rights Commission informed Plaintiff that the "evidence does not meet the legal standard to determine that a violation ha[d] occurred." (Def.'s Mot. Summ. J. (#19), Ex. I.)

Plaintiff initiated the present action in the District Court for Clark County, Nevada, on July 10, 2008. The City subsequently removed the case to this court.

## II.   Legal Standard

Summary judgment is appropriate only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In assessing a motion for summary judgment, the evidence, together with all inferences that can reasonably be drawn therefrom, must be read in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *County of Tuolumne v. Sonora Cmty. Hosp.*, 236 F.3d 1148, 1154 (9th Cir. 2001).

The moving party bears the burden of informing the court of the basis for its motion, along with evidence showing the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). On those issues for which it bears the burden of proof, the moving party must make a showing that is "sufficient for the court to hold that no reasonable trier of fact could

3

1  find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir.
2  1986); *see also Idema v. Dreamworks, Inc.*, 162 F. Supp. 2d 1129, 1141 (C.D. Cal. 2001).

3        To successfully rebut a motion for summary judgment, the non-moving party must point to
4  facts supported by the record which demonstrate a genuine issue of material fact. *Reese v.*
5  *Jefferson Sch. Dist. No. 14J*, 208 F.3d 736 (9th Cir. 2000). A "material fact" is a fact "that might
6  affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S.
7  242, 248 (1986). Where reasonable minds could differ on the material facts at issue, summary
8  judgment is not appropriate. *See v. Durang*, 711 F.2d 141, 143 (9th Cir. 1983). A dispute
9  regarding a material fact is considered genuine "if the evidence is such that a reasonable jury could
10 return a verdict for the nonmoving party." *Liberty Lobby*, 477 U.S. at 248. The mere existence of a
11 scintilla of evidence in support of the plaintiff's position will be insufficient to establish a genuine
12 dispute; there must be evidence on which the jury could reasonably find for the plaintiff. *See id.* at
13 252.

14 **III.  Discussion**

15       In the complaint, Plaintiff alleges the following claims for relief: (1) discrimination; (2)
16 retaliation; (3) negligent supervision; (4) intentional infliction of emotional distress; and (5)
17 "wrongful termination/constructive discharge."[2] The City seeks summary judgment on each of
18 Plaintiff's federal claims and asks that the court decline to exercise supplemental jurisdiction over
19 Plaintiff's remaining state law claims.

20     **A.  Discrimination**

21       The ADA prohibits an employer from discriminating against a "qualified individual on the
22 basis of disability in regard to job application procedures, hiring, advancement, or discharge of

---

[2] In the complaint, Plaintiff also states that she was subjected to a hostile work environment. Although it is not clear whether she intended to allege this as a separate claim for relief, no evidence before the court suggests that she was subjected to the type of severe and pervasive harassment requirement to support a hostile work environment claim. *See Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 270-71 (2001).

employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). The ADA contemplates two types of discrimination: (1) disparate treatment and (2) failure to accommodate. *See McGary v. City of Portland*, 386 F.3d 1259, 1265-66 (9th Cir. 2004) (citations omitted). The court will address each of these theories below.

### 1. Disparate Treatment

The plaintiff in a disparate treatment discrimination case has the initial burden of establishing a prima facie case of discrimination. *See Raytheon Co. v. Hernandez*, 540 U.S. 44, 49-50 (2003) (applying burden-shifting analysis to ADA discrimination claim). To do so, the plaintiff must demonstrate that she (1) is disabled within the meaning of the ADA, (2) is qualified for her position, and (3) suffered an adverse employment action because of her disability. *Snead v. Metro. Prop. & Cas. Ins. Co.*, 237 F.3d 1080, 1087 (9th Cir. 2001) (citation omitted).

The City contends that Plaintiff has failed to establish a prima face case of discrimination because she cannot demonstrate that she was subject to an adverse employment action because of her disability. An adverse employment action is "any action reasonably likely to deter employees from engaging in protected activity." *Pardi v. Kaiser Permanente Hosp., Inc.*, 389 F.3d 840, 850 (9th Cir. 2004) (internal quotation marks and citation omitted). Plaintiff identifies the following as adverse employment actions: (1) receiving a disproportionately heavy caseload; (2) being assigned the work load of other employees; (3) having her request for assistance with her caseload denied; (4) being treated negatively by her supervisor, Cedric Cole; and (5) being retaliated against for filing suit against the City.

The court finds that, even assuming Plaintiff had some evidence to support these allegations, no evidence before the court suggests that the City took these actions because of Plaintiff's disability. Although the ADA does not require that an employer take the adverse employment action solely because of the plaintiff's disability, the disability must be a motiving

5

factor in the employment decision. *Head v. Glacier Nw.*, 413 F.3d 1053, 1065 (9th Cir. 2005). Here, there is no indication in the evidence that the City's actions were in any way related to Plaintiff's disability. Accordingly, the court will grant summary judgment as to Plaintiff's discrimination claim.

### 2. Reasonable Accommodation

A discrimination claim under the ADA can also arise where an employer fails to make a reasonable accommodation for an employee's disability. *McGary*, 386 F.3d at 1265-66 (citations omitted). Here, Plaintiff alleges the City failed to reasonably accommodate her reactive airway disease by refusing to improve the air quality in her office.

The ADA "prohibits an employer from discriminating against an 'individual with a disability' who, with 'reasonable accommodation,' can perform the essential functions of the job." *U.S. Airways, Inc. v. Barnett*, 535 U.S. 391, 393 (2002) (citing 42 U.S.C. §§ 12112(a), (b)). "Once an employer becomes aware of the need for accommodation, that employer has a mandatory obligation under the ADA to engage in an interactive process with the employee to identify and implement appropriate reasonable accommodations." *Humphrey v. Mem'l Hospitals Ass'n*, 239 F.3d 1128, 1137 (9th Cir. 2001) (citation omitted).

To initiate the interactive process, the employee need only "inform the employer of the need for an adjustment due to a medical condition." *Zivkovic v. S. Cal. Edison Co.*, 301 F.3d 1080, 1089 (9th Cir. 2002) (citation omitted). Once the employee has requested an accommodation, the interactive process requires the following: (1) direct communication between the employer and the employee to explore in good faith the possible accommodations; (2) consideration of the employee's request; and (3) offering an accommodation that is reasonable and effective. *Id.* (citation omitted). Although an employer need not provide the employee with the specific accommodation she requests or prefers, the accommodation must be reasonable in that it enables the employee to perform the duties of her position. *Zivkovic*, 302 F.3d at 1089 (citation omitted).

1    Here, Plaintiff initiated the interactive process by complaining to her union representative
2 about her breathing problems.  The union representative reported Plaintiff's complaint to the safety
3 officer for the City and brought Plaintiff to speak with the safety officer.  Plaintiff testified that
4 following the meeting, the City came to her office building and checked the air quality conditions.
5 Plaintiff further testified that she does not know what occurred after the City checked her building
6 because she resigned.  In her affidavit she states that she resigned because she "felt that the City
7 was not going to take the appropriate steps to accommodate [her] diagnosed disability condition."
8 (Pl.'s Opp. (#22), Ex. 3, ¶ 6.)

9    Thus, it is undisputed that the City communicated with Plaintiff about her breathing issues
10 and began to investigate how it could address those issues.  Before the City could offer Plaintiff a
11 reasonable and effective accommodation, however, Plaintiff resigned.  Plaintiff has offered no
12 evidence supporting her belief that the City was not going to take appropriate steps to
13 accommodate her disability.  Accordingly, the court finds that based on the evidence before the
14 court, no reasonable jury could conclude that the City failed to accommodate Plaintiff's disability.

**B. Retaliation**

16    Plaintiff alleges the City retaliated against her for filing a charge of discrimination with the
17 Equal Employment Opportunity Commission and for her related law suit concerning the air quality
18 at the City's detention center.  To establish a prima facie case of retaliation under the ADA, the
19 plaintiff must show the following: (1) she engaged in a protected activity, (2) she suffered an
20 adverse employment action, and (3) there is a causal connection between the two.  *Pardi v. Kaiser*
21 *Pemanente Hosp., Inc.*, 389 F.3d 840, 849 (9th Cir. 2004) (citation omitted).  If the plaintiff
22 establishes a prima facie case, the burden shifts to the defendant to offer a legitimate reason for the
23 adverse employment action.  *Id.*  If the defendant meets its burden, the burden returns to the
24 plaintiff to demonstrate that the defendant's reason is pretextual.  *Id.*

25    Plaintiff has failed to present evidence suggesting that any City employee with whom she

7

worked in the Department of Neighborhood Services was aware of her EEOC complaint or subsequent lawsuit. Likewise, no evidence before the court suggests that any City employee with control over Plaintiff's employment, including her direct supervisors, had knowledge of Plaintiff's protected activity. Plaintiff argues that the timing of her complaints and the allegedly adverse actions suggests a causal connection between the two. However, Plaintiff filed her EEOC charge in 2005, and her lawsuit in 2006, and the actions of which she complains did not occur until the latter half of 2007. As such, the temporal proximity between her complaints and the allegedly adverse actions does not give rise to an inference of causation. *See Cornwell v. Electra Central Credit Union*, 439 F.3d 1018, 1036 (9th Cir. 2006) (seven-month time lapse did not show causation); *Mannatt v. Bank of America, NA*, 339 F.3d 792, 802 (9th Cir. 2003) (nine-month time lapse did not show causation); *see also Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273-74 (2001) (stating that "[t]he cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be 'very close,'" and citing cases finding a three month and four month period insufficient).

In sum, even assuming Plaintiff could demonstrate that she suffered an adverse employment action, no reasonable jury could conclude that Plaintiff's protected activity was in any way related to the adverse actions. Summary judgment on Plaintiff's retaliation claim is therefore appropriate.

### C. State Law Claims

Finally, Defendants ask that the court dismiss the remaining state law claims. Under 28 U.S.C. § 1367(c)(3), the court may decline to exercise supplemental jurisdiction over a state law claim if the "district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). Because the court has dismissed all of Plaintiff's federal claims and in light of the "values of economy, convenience, fairness, and comity," the court declines to exercise supplemental jurisdiction over Plaintiff's state law claims. *See Acri v. Varian Associates*, 114 F.3d

999, 1001 (9th Cir. 1997) (citations omitted).

IT IS THEREFORE ORDERED that the City's Motion for Summary Judgment (#19) is GRANTED.

The Clerk of the Court shall enter judgment accordingly.

IT IS SO ORDERED.

DATED this 9th day of June, 2010.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE

9